IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:23-cv-1968 |
| THE LETCO GROUP LLC d/b/a LIVING EARTH TEXAS, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff John Miller ("Mr. Miller" or "Plaintiff") files this Original Complaint against The Letco Group LLC d/b/a Living Earth Texas ("Defendant").

## SUMMARY

1. Mr. Miller commenced a job for Defendant as a heavy equipment operator.

2. Four weeks after his background check was completed, Defendant made the decision to terminate Mr. Miller's employment on the basis that he had not disclosed criminal convictions dating back more than thirty years.

3. Defendant's termination of Mr. Miller flows from a discriminatory employment practice due to its disparate impact on the basis of race and is thus in violation of Title VII of the Civil Rights Act of 1964.

## THE PARTIES AND JURISDICTION

4. Plaintiff is a natural person residing within the confines of the Southern District of Texas, Houston Division. Plaintiff has standing to file this lawsuit.

5. Defendant The Letco Group LLC d/b/a Living Earth Texas is a Delaware corporation with its principal office in Texas, conducting business in the Southern District of Texas, Houston Division.

6. Defendant may be served with this Complaint through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

7. The Court has subject matter jurisdiction over this case based on federal question jurisdiction under Title VII of the Civil Rights Act of 1964.

8. Venue is appropriate in the Southern District of Texas, Houston Division, because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district.

## FACTUAL BACKGROUND

9. On or about May 28, 2021, Mr. Miller accepted a job offer from Defendant as a heavy equipment operator.

10. As part of the onboarding process, Mr. Miller completed a job application form that included a section on criminal history and gave Defendant authorization to conduct a background check.

11. On or about June 7, 2021, Mr. Miller began working for Defendant before the background check had been completed.

12. On June 14, 2021, Mr. Miller's background check was completed.

13. Almost one month later, on July 12, 2021, Defendant informed Mr. Miller that he had been terminated because he had not disclosed criminal convictions that had turned up on his background check.

14. The Texas Business and Commerce Code's Section 20.05(a)(4) prohibits a consumer reporting agency from furnishing a report containing "a record of arrest, indictment, or

conviction of a crime in which the date of disposition, release, or parole predates the consumer report by more than seven years."

15. Despite the background report containing an entry of "Years: 7" in order to comply with Section 20.05(a)(4), the report revealed details of convictions Mr. Miller had received more than thirty years prior. Exhibit 1.

16. Defendant's sole reason for terminating Mr. Miller was on the basis of the discovery of these long-ago crimes that it had apparent knowledge of for nearly a month while Mr. Miller continued to work for Defendant.

17. Mr. Miller is a Black American. Defendant's employment practice leading to the decision to terminate Mr. Miller is discriminatory because of its disparate impact on the basis of his race.

**CLAIM OF DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT**

18. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

19. Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

20. The U.S. Equal Employment Opportunity Commission has issued guidance as to whether employment tests and selection procedures, including criminal background checks, constitute the sort of "disparate impact" discrimination prohibited by Title VII. Exhibit 2. This guidance is modeled on a burden-shifting framework modeled on the Supreme Court's decision in *Griggs v. Duke Power Co.,* 401 U.S. 424 (1971).

21. An analysis begins by determining whether "the employer use[d] a particular employment practice that has a disparate impact on the basis of race, color, religion, sex, or

national origin." Exhibit 2. Determination of disparate impact on a protected group typically requires statistical analysis. *Id.*

22. Statistical analysis on the racially disparate impact of criminal background checks on Black Americans is abundant.

23. According to 2020 U.S. Census figures, Black or African Americans constitute 13.6% of the U.S. population. Exhibit 3. However, according to Federal Bureau of Investigation Statistics, 26.6% of all arrests in 2019 were of Black or African Americans. Exhibit 4.

24. According to a study led by a University of Georgia professor, 15% of the African American adult male population in the U.S. has been to prison compared to just 3% of the total adult U.S. population, while 33% of the African American adult male population has a criminal conviction compared to 8% of all adults. Exhibit 5.

25. The Texas Criminal Justice Policy Council reported that incarceration rates for minorities, particularly Black Americans, increased significantly between 1985 and 1991, with drug offenses accounting for most of the growth in the number of Black Americans arrested and incarcerated. Exhibit 6. The incarceration rates for Black Americans (per 100,000 Black adult population) *more than doubled* between 1985 and 1991. *Id.*

26. Plaintiff's two undisclosed criminal convictions both occurred during this time period, in 1989 and 1990. Exhibit 1.

27. The topic of criminal background checks has also been written about extensively in law review articles, including in *Need Not Apply: The Racial Disparate Impact of Pre-Employment Criminal Background Checks*, in which the author argues that criminal background checks statistically discriminate against Black American job applicants and are neither "job-related" nor "consistent with business necessity" as mandated by Title VII. Robert Concepcion,

Jr., *Need Not Apply: The Racial Disparate Impact of Pre-Employment Criminal Background Checks*, 19 Georgetown J. on Poverty L. & Pol'y 231 (2012). Exhibit 7.

28. If a particular employment practice is determined to have disparate impact, then the burden shifts to the employer to "show that the section-procedure is job-related and consistent with business necessity." Exhibit 2. If the employer can satisfy those requirements, the burden shifts to "the person challenging the selection procedure [to] demonstrate that there is a less discriminatory alternative available." *Id.*

29. There is an old adage in American society: you do the crime, you do the time. However, Americans should not have to continue to do time for crimes that they have completed their sentence for over 30 years ago. Plaintiff should not continue to be punished for a crime that occurred before the collapse of the Soviet Union.

30. While Plaintiff does not dispute the need for Defendant to conduct criminal background checks on its new employees, a less discriminatory practice in keeping with the spirit of the EEOC's guidance on disparate impact and in compliance with the Texas Business and Commerce Code Section 20.05(a)(4) would be to limit Defendant's background searches to convictions within the last seven years.

31. All conditions precedent to this suit have been fulfilled.

32. Plaintiffs who prevail in a discrimination claim are entitled to back pay. The purpose of back pay is to "make whole the injured party by placing that individual in the position he or she would have been in but for the discrimination." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988).

33. Prevailing plaintiffs are also entitled to reinstatement as an equitable remedy. *See Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 1992). If reinstatement is not feasible, front pay will be awarded in a manner consistent with the remedial purposes of the law. *See*

*Brunnemann v. Terra Int'l Inc.*, 975 F.2d 175, 180 (5th Cir. 1992). Unlike back pay, front pay refers to future lost earnings. *See, e.g.*, *Jackson v. Host Intern., Inc.*, Nos. 09–51137, 10–50026, 2011 WL 2119644, at *8-9 (5th Cir. Feb. 1, 2011) (Fifth Circuit decision affirming front-pay award in a discrimination case); *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 527 (5th Cir. 2001) (same).

34. Prevailing plaintiffs are also entitled to attorney's fees and costs.

## JURY DEMAND

35. Plaintiff demands a jury trial.

## DAMAGES AND PRAYER

Plaintiff asks that he be awarded a judgment against Defendant for the following:

a. Actual damages in the amount of lost back pay, lost benefits, and other economic losses;

b. Reinstatement or front-pay;

c. Compensatory damages;

d. Punitive damages;

e. Prejudgment and post-judgment interest;

f. Court costs;

g. Attorney's fees; and

h. All other relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Ahad Khan

Ahad Khan
Texas Bar No. 24092624
S.D. Texas ID No. 2981398
712 Main Street, Suite 900
Houston, TX 77002
(713) 401-3558 – Telephone
ak@ahadkhanlaw.com – Email

ATTORNEY FOR PLAINTIFF
JOHN MILLER